## TAYLOR *v.* GRISSOM

No. 40515 June 3, 1957 95 So. 2d 541

*Warren Upton,* Birmingham, Ala.; *L. Herbert Etheridge,* Bessemer, Ala., for appellant.

*Welch, Gibbes & Graves,* Laurel, for appellee.

LEE, J.

Mrs. Rossie Rogers Taylor filed her bill of complaint, in the nature of a bill of review, on October 5, 1955, praying that the court set aside and annul its opinion and findings in a decree of date of October 7, 1953, wherein the court had annulled and set aside its decree of date of May 30, 1952. All previous pleadings in the cause were incorporated and made a part thereof by reference. The substance of the bill was that the petitioner had employed T. J. Wills as counsel; that she was unable to be present at a hearing of the original cause set for October 5, 1953, because of the death and burial of a foster brother the day before; that she relayed this information to her counsel, who agreed to procure a continance for several days; but that through fraud, mistake or accident, her counsel was unable to obtain the relief; that the court erroneously arrived at the conclusion that she was "toying with the court" and never intended to appear for the trial; that she sent one of her main eyewitnesses to Laurel or Paulding, Mississippi, but that, on arrival, the witness was informed that Attorney Wills had returned to Hattiesburg; that several weeks later her counsel advised by letter that he had procured a dis-

missal without prejudice (she did not attach this letter to the bill) ; and that, on account of her limited finances and the necessity to work, it was sometime later, only after an independent investigation, that she learned that the cause had been dismissed with prejudice. She alleged that extrinsic fraud in the procurement of the decree of October 7, 1953, was practiced upon the court by failure to present the true and correct facts and circumstances of her failure to appear on October 5, 1953.

The demurrer of the respondent, Grissom, set up a number of grounds, which in effect contended that there was no equity on the face of the bill; the allegations of the bill were insufficient to show fraud; the alleged extrinsic fraud was a mere conclusion of the pleader; that if there was fraud, negligence or failure, it was the act of complainant's attorney and agent and not of the respondent; and that the complainant had not exercised diligence in timely discovering the fact of dismissal after the rendition of the decree.

On final hearing, the court, by a decree of date of June 12, 1956, sustained the demurrer. The complainant refused to amend her bill of complaint or plead further, and the cause was finally dismissed with prejudice. From the decree entered, the complainant appealed.

In chronological order this litigation unfolded substantially as follows: On January 27, 1952, John Kepler Taylor, a prominent member of the Birmingham, Alabama, bar, died testate. He had a substantial estate, and his will, devising his property almost entirely to three sisters and a nephew, was admitted to probate on February 6, 1952. He did not mention Rossie Cowen Rogers or state that he had a wife.

On May 30, 1952, Rossie Cowen Rogers, also a member of the Birmingham bar, appearing as Rossie Cowen Rogers Taylor, filed a petition in the Chancery Court of Jasper County, praying that the Circuit Clerk of Jasper

County be directed to make a restored record nunc pro tunc as of September 17 and 18, 1932, of the marriage of Rossie Cowen Rogers to John Kepler Taylor. She alleged that the marriage occurred in the town of Paulding on September 17, 1932, under the authority of a license issued by the clerk; that the ceremony was performed by Judge E. M. Lane, and was witnessed by Ruth Reaves Brown and Everette Francis Poe; that religious rites of marriage were celebrated between them by Rev. M. M. Jones on September 18, 1932, with the same witnesses, and was certified to the Circuit Clerk of Jasper County at Paulding; that Judge E. M. Lane died on November 10, 1943; and that the courthouse at Paulding burned on September 24, 1932, and the record of this marriage was destroyed. She attached affidavits of the alleged witnesses to the marriage, and a certificate from the clerk of Ebenezer Baptist Church in Alabama that the marriage had been consummated at the church on September 18, 1932. Suggested forms of the proposed substituted record of marriage and the certificate therefor were also attached. The petition appeared to have been sworn to before a notary public on April 17, 1952.

James O. Grissom, circuit clerk, waived the service of process and consented that the cause might be heard instanter. He further certified that he had made a diligent search of the records in his office and he could not find any record of the issuance of this license or the celebration of the rites.

The chancellor heard the matter, and by decree, dated May 19, 1952, found the allegations of the petition to be true, and awarded the relief prayed for.

The scene then shifted to Alabama. On August 4, 1952, Rossie Cowen Rogers Taylor filed a bill in the Circuit Court of Jefferson County, Alabama, in Cause No. 88,199 in Equity, contesting the will of John Kepler Taylor, deceased. She alleged that she was the widow of the decedent; that she was excluded from the provi-

sions of the will as the result of undue influence by Dr. Lola Taylor, a sister of the decedent, and others; and that they deprived the complinant of access to her husband and conducted a campaign to alienate his affections from her. She set up that as the widow she was entitled to receive the personal estate of the decedent, homestead exemptions, and to dower to the extent of one-half of the value of the real estate.

The scene then shifted back to Mississippi. On October 15, 1952, James O. Grissom, circuit clerk, filed his motion to vacate and set aside the decree dated May 19, 1952, which had directed him to make a restored record as of September 17 and 18, 1932, of the marriage of Rossie Cowen Rogers and John Kepler Taylor. The motion enumerated all and sundry the allegations of the original petition, and alleged that each and all of them were untrue, to-wit: No marriage license was issued on September 17, 1932. No marriage was reported to the clerk. The courthouse at Paulding did not burn on September 24, 1932, but burned on September 10, 1932. The records after that date were not burned and the claimed records of September 17 and 18, 1932, were not burned at all. His admissions to the allegations of the original petition were erroneous. The decree was based entirely upon a a mistake of fact. It was procured as a result of the fraud of Rossie Cowen Rogers Taylor. She had subsequently filed a suit in the courts of Alabama, seeking to show that she was the widow of John Kepler Taylor by reason of the alleged marriage at Paulding, and concerning which, her suit had been filed in the chancery court; seeking to restore the records so as to show that she was the widow of the deceased Taylor by reason of such ceremonial marriage, and was seeking to obtain about $50,-000 from the estate of the decedent; and that she disclosed none of these matters, in the first instance, to the movant or to the court.

Process for Rossie Cowen Rogers Taylor was issued October 15, 1952, commanding her to appear at the courthouse in the town of Paulding, Mississippi, on November 24, 1952, and answer the motion. She was personally served with this process on October 21, 1952.

After hearing much evidence, oral and documentary, the chancellor, at the conclusion of the case, made an extended finding of fact substantially as follows: The courthouse burned September 10, 1952. All marriage forms and records were destroyed. The office did not issue a license for at least two weeks thereafter. This marriage was not reported to the Bureau of Vital Statistics. If anything took place at Ebenezer Baptist Church on Sunday, September 18, 1932, it was merely a spiritual blessing. Both parties had the reputation of being single. After September 17, 1932, Taylor had executed a deed stating that he was a single man. His income tax return both to the State of Alabama and to the United States represented that he was unmarried. Likewise his application for a commission in the Reserve Corps of the U. S. Army. The parties were seen together in the hotels of Birmingham during the latter part of Taylor's life, but the fact that she slept with him in his office and in such hotels did not establish a ceremonial marriage. Taylor was a man of good personality, of more than ordinary ability, forceful and a leader of men. He was successful in the practice, and could not be dominated by his sister or anyone else. The marriage license was never issued at Paulding on September 17, 1932. Judge E. M. Lane did not perform a marriage ceremony at that time. The Rev. M. M. Jones never performed the rites of matrimony.

The final decree, dated February 3, 1953, declared the decree of the court, dated May 19, 1952, but which was found to have been signed on May 30, 1952, to be void and of no effect, and that it was obtained by fraud

and on false representations of the petitioner. It recited in substance all of the findings, as stated in the opinion.

On February 5, 1953, Grissom moved also for a final dismissal of the original petition on the ground that the court, in sustaining his motion to vacate, had decided all factual questions involved in the matter.

On account of the alleged inability of the petitioner to be present at the May 1953 Term of the court, the chancellor, by a decree dated May 15, 1953, took the motion under advisement to be heard at the courthouse at Laurel on June 29, 1953, or as soon thereafter as convenient to the court; and all parties were charged with notice of the setting. Thereafter, on June 29, July 6, July 13, and September 18, successive continuances were granted at the instance of the petitioner, and the cause was set peremptorily for trial on October 5, 1953.

On October 7, 1953, the court heard this matter and rendered an oral opinion thereon. He stated that he was considering two motions, namely, the motion of Grissom to dismiss finally, and the oral motion of petitioner to dismiss without prejudice. He stated briefly what had theretofore transpired, and that, during November, December and January he had heard testimony for seven days and in addition extended arguments, as a result of which, the original decree had been set aside. He reiterated the various continuances at the instance of the petitioner, as detailed above. On October 5, 1953, T. J. Wills appeared in court and exhibited a telegram to the effect that petitioner was unable to be present because of a death in her family. A telephone conversation verified this representation. This case was reset for October 7, 1953. On that day, another telegram said that petitioner would be at Laurel at 1:00 o'clock and that her witnesses were at the Pinehurst Hotel. The court and counsel proceeded to Laurel. But petitioner did not appear. Neither her witnesses nor the petitioner could be found

at Paulding or at the hotel. It had been agreed that all of the evidence, which had been taken on the motion to set aside the decree, was introduced on the motion to dismiss. About 2:30 that afternoon, counsel for petitioner orally moved the court to allow him to take a nonsuit or to dismiss the original petition without prejudice. But the court was of the opinion that the petitioner never intended to appear either at Paulding or at Laurel, and "was toying with the court"; and that by reason of all of the testimony which had been taken the respondent had acquired rights that probably would not be available to him if the motion to dismiss the petition without prejudice was sustained. The court found that the facts were the same on the motion then before him as on the motion to set aside the decree of May 30, 1952.

The final decree conformed to the oral findings. The findings of fact of February 3, 1953, and the decree thereon were incorporated by reference as the findings of fact on this motion. The court further found that the material averments of the petition were false and untrue.

The scene shifted back to Alabama. The respondents in Cause No. 88,199 in the Circuit Court of Jefferson County, Alabama, In Equity, filed their answer, denying that Rossie Rogers Taylor was the widow of J. K. Taylor or that she was entitled to use the name of Taylor, and all of the other material allegations of her complaint.

The final decree of the court, of date of March 14, 1955, stated that, at the conclusion of the evidence, the court took the cause under advisement and having considered the issues and the evidences taken orally, found substantially as follows: The decrees of the Chancery Court of Jasper County, Mississippi, and the record of the evidence and proceedings therein were conclusive against the petitioner and constituted a binding adjudication that there was no valid ceremonial marriage between her and J. K. Taylor. In addition thereto the testimony of

various witnesses and exhibits in that cause were introduced in the present proceedings, and had been considered, and the court found that there was no ceremonial marriage between these parties. The court further found from the evidence that there was never a common law marriage between these parties; and that the complainant was not the widow of J. K. Taylor, and had no interest in the estate, which would entitle her to contest the will. The motion of the respondents to dismiss the bill with prejudice was sustained.

Subsequently a motion to set aside the decree of March 14, 1955, and grant a new trial was overruled June 28, 1955.

A bill of review in that cause, which set out the prior proceedings, with exhibits A through O was filed. Demurrers thereto were interposed by all respondents. But the record does not show a final disposition of that proceeding.

Thus from May until October 1953, following the setting aside on February 3, 1953, of the decree of May 30, 1952, the respondent's motion for final dismissal was continued five times at the instance of the petitioner. The court at 2:30 o'clock on the afternoon of October 7, 1953, overruled the oral motion of her counsel to allow a nonsuit or dismissal without prejudice, on the ground that she had been toying with the court, and that the respondent had acquired rights that probably would not be available to him, if her motion should be sustained.

 █ In that action of the court was error, under Sections 1538 and 1539, Code of 1942, as construed by the cases annotated thereunder, or if the court did not have the power to refuse the allowance of such motion, as an exception (see Griffith's Mississippi Chancery Practice Section 534, and the cases cited thereunder) "the proper way to right such wrong was by appeal, and not by a bill of review, after the time for appeal had expired". Dol-

lar v. Board of Education of Simpson County, (Miss.) 86 So. 2d 489. See also Arndt v. Kuhn, (Miss.) 86 So. 2d 323, where it is said that ██ ██ "Bills of review are not favored".

██ ██ The trial judge had spent much time in hearing this controversy. All of the evidence was before him. He had already decided that the decree of May 30, 1952, should be set aside, and that there had been no ceremonial marriage between the parties. This fact was so adjudged on February 3, 1953, and no appeal therefrom had been taken. Actually the charge in the bill of review was that petitioner's counsel did not get a continuance as he had promised, but advised that the cause had been dismissed without prejudice, when in fact, it had been dismissed with prejudice. As heretofore stated no profert of this letter was made. But, if what she said about her counsel was true, nevertheless this did not amount to fraud upon the court, who most certainly was cognizant of all that had transpired. On the contrary, her allegation amounted simply to a charge of neglect against her counsel, who had been fully exonerated of any blame on account of the delay in the hearing.

Moreover the real parties in interest all live in Alabama. The property is in Alabama. While the Alabama court adjudged that Mrs. Taylor was bound by the decision of the Mississippi court on the question of the ceremonial marriage, it did not stop at that point. It went further and also found, from the evidence before it, that there had been no ceremonial marriage between these parties. In addition, it found that petitioner was not a common-law wife. In other words, the decision of the Alabama court, on the merits, was adverse to the appellant. Consequently the courts of this state should no longer be expected to concern themselves with litigation in which

the real controversy is between citizens of another state, about property in that state, the merits of which have been decided by the courts of that state, and as to which the courts of this state can make no enforceable decree.

The decree of the lower court is therefore affirmed.

Affirmed.

*Hall, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.