JOHNSON *v.* GRICE.*

(Division A.   Dec. 7, 1925.)

[106 So. 271.   No. 25264.]

1. GIFTS.   *Delivery and retention of possession necessary for gift causa mortis.*

    For gift *causa mortis,* which is always conditioned on death, possession of property must be delivered to donee and retained during life of donor.

2. GIFTS.   *Delivery and statement held to constitute completed gift causa mortis.*

    Delivery of note by payee, in contemplation of his death, to J., indorsed, "In case of my death before this note matures, I hereby transfer . . . payment of same to J.," statement by payee to maker that he wanted payment made to J., and retention of note by J. till after death of payee before its maturity, *held* to constitute completed gift *causa mortis.*

3. EXECUTORS AND ADMINISTRATORS.   *Gifts causa mortis subject to right of creditors.*

    Gift *causa mortis* is subject to right of donor's creditors in case estate is otherwise insufficient to satisfy debts.

---

*Headnotes 1.   Gifts, 28 C. J., Sections 92, 103, 104, 118; 2. Gifts, 28 C. J., Section 128; Requisite of gifts *causa mortis,* see 25 A. L. R., p. 645; 12 R. C. L., p. 958 et seq.; 2 R. C. L. Supp., p. 1518; 4 R. C. L. Supp., p. 780; 5 R. C. L. Supp., p. 667. 3, Gifts, 28 C. J., Section 125. Gift *causa mortis* cannot avail against creditors, see 12 R. C. L., p. 968.

APPEAL from chancery court of Lincoln county.

HON. V. J. STRICKER, Chancellor.

Petition by Barney Grice, administrator of N. C. Collins, deceased, against Willie Johnson. From adverse decree, defendant appeals. Reversed and remanded.

*Mayson & Kelly,* for appellant.

*The notes were given to the appellant and she acquired a perfect title to the proceeds.* The prevailing doctrines relative to gifts are undoubtedly of civil law origin. Treating the gift here as one *causa mortis* it is perfect and unimpeachable, and complied with all the requisites of a gift of that kind in accordance with the provisions of the civil law. *Vide* Coopers Inst. of Justinian, Lib. II, Tit. VII, number 1.

If the gift were unconditional, as suggested by the chancellor, it would destroy its effect as a gift *causa mortis.* The right of revocation is an essential element in a gift *causa mortis* under both the civil and the common law. The gift is subject to the implied condition that if the donor recovers, or the donee die first, the gift shall be void and possession of the property, of course, must be delivered to the donee. *Johnson* v. *Colley,* 99 Am. St. Rep. 884, 101 Va. 414, 44 S. E. 721.

The deceased had directed the writer of the letter to send the notes to appellant so that if anything happened he wanted her to be his successor. Not only that, just a few days before he died he sent for the maker of the notes and the ownership of the notes was discussed, and, according to the maker's testimony he said "I want you to pay it to Willie." Delivery of the subject-matter of the gift by the donor to the donee, under the conditions above enumerated, perfects the gift in the donee. *Pace* v. *Pace,* 107 Miss. 292, 65 So. 273.

This case is also authority for the position that we have taken above that it makes no difference whether it

be called a gift *inter vivos,* or *causa mortis.* See also *Parker* v. *Mott,* 181 N. C. 435, 107 S. E. 500, 25 A. L. R. 637.

Our own court has recently held that it is not necessary that the donee have actual possession of the notes, but that there must be a surrender of control over the same. In this case the court was speaking of gifts *inter vivos.* See *Harmon* v. *McFarlane,* 99 So. 566.

The learned chancellor in his opinion also says: "At his death only and before maturity could she claim as donee." The learned chancellor is mistaken in that position, and is supported neither by reason nor authority. The time of the delivery would control. The title of the donee becomes by relation complete and absolute from the time of delivery; no consent or other act on the part of the personal representative is necessary to perfect the title of the donee; it is a claim against the personal representative; a legacy is a claim from and through him. 28 C. J. 685, sec. 94. The same doctrine is announced in *Green* v. *Tulane,* 52 N. J. Eq. 169, 28 Atl. 9.

We have already stated that the title of the appellant would be good whether the gift was *inter vivos* or *causa mortis.* It seems that the only material distinction between the two is that in case of gift *causa mortis* the survival of the donor may defeat the gift. *Sharp* v. *Sharp,* 105 S. C. 459, 90 S. E. 34, 3 A. L. R. 891.

It is believed that the transactions between the deceased and Willie Johnson have all the elements of a gift without reference to the name. It is, therefore, respectfully urged that the decree of the court below ought to be reversed and a decree rendered in this court for appellant.

*J. F. Noble,* for appellee.

The instant case is one of gift *causa mortis.* All the facts and testimony demonstrate this to be true. Appellant cites 28 C. J. 685, sec. 94. Appellee agrees that

the law as announced therein is correct; but this law avails appellant nothing whatsoever. These are the reasons: In a gift *causa mortis* it is essential that the gift be made under apprehension of death from some existing disease, or other impending peril. Donor need not be *in extremis,* but vague or general apprehension of death is not sufficient. See 28 C. J. 688, sec. 100. The testimony fails to show that Collins expected death as meant in the above-mentioned authority. Vague apprehension of death is not all sufficient. The apprehension of death must be immediate.

A gift *causa mortis* cannot avail against creditors of the donor, where there is a deficiency of assets. See 12 R. C. L. 968, sec. 40; 28 C. J. 699, sec. 125. These authorities absolutely hold that such a gift cannot avail as against creditors. This is not only good law and good logic but it is fair and right.

There are creditors in this estate. By such a gift Collins could not shut out his creditors. The chancellor was correct in his decision and ought to be sustained by this court.

*Mayson & Kelly,* in reply for appellant.

Counsel says that gift *causa mortis,* could not avail against creditors but in this he is mistaken. *Pace v. Pace,* 107 Miss. 292, 65 So. 273. But even if it were true that the law of priorities would prevail, still there are no creditors in this case who could claim as against the appellant.

*The gift of the notes cannot be questioned by a creditor because the proceeds are exempt property.* At the time of the execution of the notes the donor was a man more than eighty years of age, this little property, besides some that he afterwards gave a deed of trust to one of his creditors, was exempt by law from seizure under legal process. Laws 1914, chapter 225, Hemingway's Code, section 1821.

Exempt property, real or personal, disposed of by the owner shall not become liable to the debts of the

owner. Code 1906, section 2158, Hemingway's Code, section 1833.

McGowen, J., delivered the opinion of the court.

The petition filed in the chancery court of Lincoln county by Barney Grice, administrator of the estate of N. C. Collins, deceased, showed that the decedent at the time of his death was the owner of two promissory notes executed by Jim Gray in favor of the decedent for one hundred twelve dollars and fifty cents, one of which became due and payable March 1, 1925, and the other March 1, 1926. The petition further showed that said notes were executed as a balance of the purchase money of certain lands sold to the said Gray by the said decedent. The petition further showed that claims had been probated and filed against the estate, and at the time of filing the petition it did not appear whether the estate would be solvent or not. The petition further set up that the defendant, Willie Johnson, claimed said notes by virtue of some assignment or other transfer, the nature of which was unknown. The petition further showed that the note due March 1, 1925, had been paid to the administrator, and that he was entitled to the possession of the note due on March 1, 1926.

The answer set up briefly that immediately upon the execution and delivery of said notes by Gray to Collins the decedent, Collins, got Gray's wife to write defendant a letter and inclose said notes so that she (Willie Johnson) would be the sole owner thereof. She further averred that the notes were not delivered to her solely as a gift, but that she had been reared by the said Collins and lived with him and by her labor enabled him to acquire the lands which had been sold to Gray. She claimed the notes as her individual and exclusive property and asked that the administrator be directed to pay the proceeds of the note collected to her. On the back of these notes was the following indorsement:

"Wesson, Miss., March 1, 1924.  In case of my death before this note matures, I hereby transfer and assign payment of same to Willie Johnson.  [Signed] Nelson

his

X Collins.  Witness:  [Signed] G. L. Hays."

mark

The letter in which the notes were inclosed to Willie Johnson reads as follows:

"Wesson, Miss., March 9, 1924.

"Dear Willie:  To-night I will rite you a few lines to let you hear from me.  This leaves my family fairly well and hope this will find you and Lennette injoying the Blessings from God.  I received your letter some days ago, also the deeds.  Whi I hadent written you no sooner Mr. Collins had to get his deeds straighen up.  They were so dem I think he had to have them prented over, so I were waiting untell he got every thing straight.  Now we are buying the largest piece of land.  We mad a one hundred dollar payment, and has 2 more notes to pay.  Now I am sending you these 2 notes.  You can see when they are due.  When they are due you can send them back, one by one.  Mrs. Collins told me to send them to you so if anything should happen you will be the successor.  Mr. Collins is not so well.  He went down to his brothers yesterday.  He told me to give you his Love and say write to him.  He will be at Sontag all this week.  He say he think he will be at your house by Easter Sunday.  If I were you I would try to keep him a while.  Well I am so sleepy I must close.  Tell Jennette to go and learn fast some day she will be a woman.

"Yours as ever,                        "ELSIE GRAY."

The record shows that N. C. Collins died some time in January, 1925; that at the time the letter was written, March 1, 1924, the negro was old and feeble; that Collins sent for Jim Gray, the maker of the notes, told him he did not expect to get well, and Gray remarked:  " 'I am owing you, what must I do about the payments?' and he said, 'I want you to pay it to Willie,' " meaning Willie Johnson, the defendant herein.

Willie Johnson was his stepgrandchild, and at the time the letter was written it is shown he was in feeble health, old and infirm, and evidently did not expect to live long.

The chancellor found that this was a conditional gift and entered a decree awarding the proceeds of the note which had been paid and the possession of the note not yet due to the administrator in this case.

We think it is clear from this record that this was a gift *causa mortis,* because made by the old negro to his stepgrandchild in view of his death, and that in the event of his death before the notes matured he intended for Willie Johnson, his stepgrandchild, to have the proceeds of said notes. There was a completed delivery of the notes by the decedent to Willie Johnson. But on this record it makes no difference whether there was a gift *inter vivos* or *causa mortis,* as the result is the same. *Pace* v. *Pace,* 107 Miss. 292, 65 So. 273.

"Gifts *causa mortis*" are thus defined by 28 Corpus Juris, section 92, pp. 684, 685:

"*A donatio causa mortis,* liberally translated, means a gift in prospect of death. It is a gift of personal property made by a party in the expectation of death, then imminent, and upon the essential condition that the property shall belong fully to the donee in case the donor dies as anticipated leaving the donee surviving him, and the gift is not in the meantime revoked, but not otherwise. Such a gift Judge STORY describes as amphibious, that is between a gift *inter vivos,* and a legacy. A gift *causa mortis* has some properties in common with gifts *inter vivos,* and some in common with legacies; but in its essential properties it is testamentary."

Such gifts are distinguished from testamentary disposition, in that they are always conditional upon death, but possession of the property bestowed must be delivered to the donee and retained by him during his lifetime.

28 Corpus Juris, pp. 685, 686, section 94, reads as follows: "While gifts *causa mortis* are in the nature of testamentary dispositions and have several character-istics in common with legacies, they differ from the latter in many important respects. A gift *causa mortis* re-sembles a legacy in that it is made in contemplation of death, is ambulatory, incomplete, and revocable at the option of the donor at any time during his life. On the other hand it differs from a legacy in several important particulars. Possession must be delivered to the donee and retained by him during the life of the donor, where-as in case of a legacy the possession remains with the testator until his decease; the claim need not be proved in a court of probate; the title of the donee becomes by relation complete and absolute from the time of de-livery; no consent or other act on the part of the per-sonal representative is necessary to perfect the title of the donee. It is a claim against the personal repre-sentative; a legacy is a claim from and through him. Al-though the donor has made a will disposing of all his personal property, a donation of this sort is good."

And the authorities cited in the notes to this section fully sustain the text.

The delivery of the notes to Willie Johnson with the written transfer thereon, together with the statement of the maker of the notes, constitutes in our opinion a gift *causa mortis.* Quoting this witness literally:

"He sent for me, and I went out there. I asked him if he expected to get well, and he said, 'No.' And I said: 'I am owing you. What must I do about the payments?' And he said, 'I want you to pay it to Willie.' "

So that we think the delivery and the statement to Gray, the debtor, constituted a completed gift *causa mortis.* But it appears that an administration of this estate was deemed necessary by the chancery court of Lincoln county, and that at the time of the trial of this case there were probated claims and the time within which the claims might be interposed had not expired,

and it is well settled that neither gifts *inter vivos* nor *causa mortis* are effective or to be effectuated as against the rights of creditors, and the record makes it uncertain that the estate in the hands of the administrator will be sufficient to pay the debts.

We are therefore of the opinion that until the rights of the creditors can be ascertained, and for their protection, the administrator would be entitled to hold such notes or the proceeds thereof. We are sustained in this position by 28 Corpus Juris, p. 699, section 125; and also by 12 R. C. L., p. 968, section 40.

We hold that under the circumstances detailed above this was a gift *causa mortis;* that the notes belong to Willie Johnson subject to the rights of creditors to be hereafter determined by the chancery court; that the balance of the estate shall be exhausted before any part of the proceeds of these notes shall be subject to debts, but if it shall be ascertained that all or any part of the proceeds of these notes are necessary to liquidate the legal claims against the estate of the decedent, all or so much thereof as may be necessary shall be so applied; and if not so required to pay debts, then all or the remainder, if any, as the case may be, should be paid to Willie Johnson.

The decree of the court below will be reversed, and decree entered here, and the cause remanded to be proceeded with as herein indicated.

*Reversed and remanded.*