RALEY, et al. *v.* SHIRLEY

No. 40155 October 1, 1956 89 So. 2d 636

632

*Melvin, Melvin & Melvin,* Laurel, for appellants.

634

Welch, Gibbes & Graves, Laurel, for appellee.

Hall, J.

On Friday, April 30, 1954, Miss Valera Mae Jones, a teacher for many years in the Jones County Agricultural High School and Junior College, died intestate, leaving as her sole and only heir at law a sister of the whole blood Mrs. Ruth Jones Shirley, a widow 66 years of age, to whom her entire estate descended under the statutes of descent and distribution of Mississippi. See Sections 468, 469 and 472, Mississippi Code of 1942. It appears that the mother of Miss Jones and Mrs. Shirley died when they were small children. Their father later re-

married and by the second marriage had six children, namely, Edward Jones, Miss Elizabeth K. Jones, Mrs. Mary Ellen Jones Babcock, Mrs. Florence Jones Williamson, Rovert C. Jones and Warren C. Jones, who under Section 469, supra, inherited no interest in the estate.

The deceased was buried on the following Sunday, which was May 2, 1954. Mrs. Shirley was present as well as Edward Jones and his three sisters. On Monday, May 3rd, Edward Jones approached Mrs. Shirley and told her that he thought that the deceased would want her half-brothers and sisters to share in the estate with her. She was just recovering from two operations for glaucoma and agreed orally that if they would permit her to have one-third of the estate, she would agree that the brothers and sisters of the half-blood could take two-thirds to be divided equally between them. They agreed that day that Mrs. W. B. Raley, Deputy Chancery Clerk and a friend of the family for many years, would be appointed administratrix for the reason that all of the family lived at distant points and none of them could serve. Edward Jones went that night to see Mrs. Raley and she agreed to serve but requested Edwards to come to the chancery clerk's office the following morning, which he did. Mrs. Raley again agreed to serve as administratrix provided she could have an attorney of her own choosing. This attorney was present and advised Edward Jones that Mrs. Shirley was the sole heir under the law and that he would have to prepare an instrument for the requested division of the property. He also advised that it would take several hours to prepare all of the papers and requested Edward to meet him back at the chancery clerk's office with Mrs. Shirley at about 4:00 P.M. that day. At the appointed time Edward Jones brought Mrs. Shirley to the chancery clerk's office and the attorney with his secretary came with a petition for appointment of Mrs. Raley as administratrix, together with a waiver to be executed by Mrs. Shirley consenting

for Mrs. Raley to serve. He also brought with him an instrument in the form of an order for a division of the estate. Because of the condition of Mrs. Shirley's eyes she was unable to read these papers but they were read to her by Mrs. Raley and Mrs. Baygents, who was the attorney's secretary, and Mrs. Shirley then executed the waiver and the other instrument for a division of the estate, which instrument in full is as follows:

"THE STATE OF MISSISSIPPI,
FIRST DISTRICT OF JONES COUNTY.

"FOR AND IN CONSIDERATION for the love and affection that I had for my sister, Miss Valera Mae Jones during her life time and for the love that I have and hold for her memory since she has departed this life and feeling assured that if she were living she would want her half blood brothers and sisters to share in her estate, I do hereby consent and agree for Mrs. W. B. Raley, the administratrix of the Estate of my dead sister, the said Miss Valera Mae Jones to collect all the assets of her estate, including personal and mixed property and real estate wheresoever located and when converted into money that she divide the same as follows: One-third is to be paid to me and the other two-thirds is to be divided equally among my half brothers and sisters, namely: Edward Jones, Miss Elizabeth K. Jones, Mrs. Mary Ellen Jones-Babcock, Mrs. Florence Jones-Williamson, Robert C. Jones, and Warren C. Jones, share and share alike.

"Witness my signature the 4 day of May, A. D. 1954.

Mrs. Ruth Jones Shirley

THE STATE OF MISSISSIPPI,
FIRST DISTRICT OF JONES COUNTY.

Personally appeared before me, Lonnie E. Meador, Chancery Clerk in and for the aforesaid jurisdiction, Mrs. Ruth Jones-Shirley who acknowledged that she

signed and delivered the foregoing instrument on the day and year therein written.

"Given under my hand and seal of office on this the 4th day of May A. D., 1954.

"Lonnie E. Meador, Chancery Clerk." The next night, Wednesday May 5th, Mrs. Shirley telephoned her son-in-law at Brookhaven, Georgia, and requested him to come and meet her at Waynesboro, Mississippi. This he did and on May 8, 1954, Mrs. Shirley gave her son-in-law a power of attorney granting full authority to act for her and in her place in any matter connected with her interest in the estate of her deceased sister.

On June 11, 1954, the administratrix and all of the half brothers and sisters of deceased were notified in writing by Mrs. Shirley's attorney that she was the sole owner of all of the assets of the estate and that anything said or done to the contrary is null, void, and of no effect.

Mrs. Raley proceeded with the prompt administration of the estate and filed her final account on November 9, 1954, and process by publication was obtained upon Mrs. Shirley and all of the half brothers and sisters of the deceased. Mrs. Shirley filed an answer to the account on December 14, 1954. The half brothers and sisters filed a general demurrer thereto on January 3, 1955. And Mrs. Shirley filed an amended answer and claim to the estate on January 10, 1955, after which, on January 13, 1955, the half brothers and sisters filed a special demurrer. The answer and amended answer and claim of Mrs. Shirley charged fraud and undue influence in obtaining the aforesaid order to the administratrix. They further charged that there was no consideration for the execution thereof and ratified and confirmed the act of her attorneys in declaring said instrument to be null and void and also rescinded and revoked any authority, right or privilege conferred thereby.

On March 22, 1955, the chancellor overruled the general and special demurrers and after issue was joined

proceeded with the hearing thereof. At the conclusion of the hearing the chancellor rendered an oral opinion which appears in the record together with a final decree. He disregarded the charges of fraud and held that the instrument aforesaid is not an assignment to the half brothers and sisters, that it is not a gift until the administratrix had made a distribution. No distribution has been made. The chancellor further held that Mrs. Shirley had a right to revoke the instrument before distribution and that she did so, and that she is a heir to the entire estate.

 █ From that decree the half brothers and sisters appeal. Mrs. Raley did not appeal and all of the parties are agreed, and the chancellor found, that Mrs. Raley discharged her trust in a prompt, faithful and efficient manner. The style of this case on the Supreme Court docket is therefore misleading. The appellants have filed three assignments of error, one being that the court erred in overruling the general and special demurrers, the second being that the court erred in holding that Mrs. Shirley could revoke the instrument and that it was not an absolute gift, and the third being that the court erred in overruling the appellant's motion for a directed finding at the close of the evidence. The brief for the appellants argues at great length that the instrument in question is an absolute gift, at least symbolically, to the half brothers and sisters and that fraud in its procurement was not shown at the trial. We agree that fraud and undue influence were not sufficiently shown to vitiate the instrument, █ but we do not agree that the instrument constitutes a gift. It was at most a consent for the administratrix to collect all the assets of the estate and convert the same into money and then to make a division thereof to Mrs. Shirley of one-third, and two-thirds to the half brothers and sisters. It is shown without dispute that there was no consideration whatsoever for the execution of this instrument, and we think that the chancellor was correct in holding that it was not an assign-

ment to the half brothers and sisters and that it does not constitute a gift until a distribution has been made, that is, until delivery of at least some of the assets in accordance with the instrument. We further think the chancellor was correct in holding that Mrs. Shirley could change her mind and revoke the instrument.

In the case of Meyer v. Meyer, 106 Miss. 638, (647-9), 64 So. 420, this Court said: ██ ██ " 'To constitute a valid gift *inter vivos,* the purpose of the donor to make the gift must be clearly and satisfactorily established, ██ ██ and the gift must be complete by actual, constructive, or symbolical delivery without power of revocation.' 20 Cyc. 1193. ██ ██ 'A mere promise or declaration of intention to give, however clear and positive, is not enough to constitute a valid gift *inter vivos.* The intention must be consummated, and carried into effect, by those acts which the law requires to divest the donor and invest the donee with the right of property. ██ ██ Complete and unconditional delivery is essential to the perfection of such a gift for when the donor retains dominion over the property, or where a *locus poenitentiae* remains in him, there can be no legal title and perfect donation, and this rule has been held particularly applicable to parol gifts, and is founded upon grounds of public policy and convenience, to prevent mistake, imposition, and perjury. ██ ██ Delivery to be effectual must be according to the nature and character of the thing given, and hence may be actual or constructive according to the circumstances. There must, however, be a parting by the donor with all present and future legal power and dominion over the property.' 20 Cyc. 1195; Thompson v. Thompson, 2 How. 737; Wheatley v. Abbott, 32 Miss. 343; Conner v. Hull, 36 Miss. 424; Young v. Power, 41 Miss. 197; Carradine v. Collins, 7 Smedes & M. 428. * * * *

"If B. is in possession of property belonging to A., A. may direct him to give it to C., and, when delivered to C. by B., C's title thereto becomes perfect; but until

so delivered, C. has no title at all; the ownership remains in A., and he may revoke B's authority to deliver it to C."

█ In the case of Gidden, et al v. Gidden, 176 Miss. 98 (110), 167 So. 785, this Court said: "In Thornton on Gifts and Advancements, p. 173, Mississippi is set out in the notes as standing alone in holding that the delivery to the donee of a deed of gift is not sufficient alone to convey the title. Whether that be true or not, and whether the rule in this state be good or bad, according to reason, we do not think it ought to be changed now. It is not a mischievous, harmful rule; the donee loses nothing, the donor simply 'plays Indian' and takes back what he attempted to give before the donee gets his hands on it."

In view of these authorities the decree of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.