BRIDGES, J.,
Dissenting:
¶ 37. While I agree with the majority in its opinion as to assignments of errors II, III and IV, I disagree with its findings in assignment I pertaining to survivorship rights; therefore, I respectfully dissent as to this matter.
¶ 38. The personal checking account held by B.A., Helen and Roger contained an express provision for joint tenancy with rights of survivorship. Therefore, there is no need to rely on the presumption of survivorship in a joint account as found in Miss.Code Ann. § 81-5-63 (Rev.1996). Instead, what I rely on is the law on joint tenancies with rights of survivorship and how this status affects the remaining joint tenants in the event of the death of one tenant.
¶ 39. The creators of a joint tenancy with rights of survivorship, in this case, Helen and B.A., do not relinquish their control of such joint tenancy accounts, but rather, divide their control with any other joint tenants. Strange v. Strange, 548 So.2d 1323, 1326 (Miss.1989). “Each joint tenant manifests a strong interest therein so long as he lives. Immediately at the death of one joint tenant, the decedent’s interest vests at that time in the other joint tenant(s).” Id. (emphasis added). Furthermore, “it is immaterial in such case whether the fund[s] originally belonged exclusively to the depositor or belonged to him and the otherfs] jointly.” Id. at 1327. “[T]he establishment of the joint bank account created a joint ownership in prae-senti regardless of which of the named joint tenants had [previously] owned the funds.” Weaver v. Mason, 228 So.2d 591, 593 (Miss.1969).
¶ 40. The bottom line is this: “where a joint tenancy account in a bank is made payable to either depositors] or surviv- or[s], the account passes to the survivor[s] upon the death of a joint tenant.” Strange, 548 So.2d at 1327; Fondren v. Bank of Franklin, 187 So.2d 304, 306 (Miss.1966). Furthermore, the joint tenancy proves to be unshakable, even by the discovery of a subsequent will in such matters. Strange, 548 So.2d at 1328. “[T]he subsequent will does not destroy the joint tenancy and does not terminate that tenancy and divest the corpus of it into the estate of the testator.” Id.
¶ 41. In the instant case, it is clear from the record and exhibits that the personal checking account held in the names of B.A., Helen and Roger was an account set up as a joint tenancy with rights of surviv-orship. The language is unambiguous. As such, upon the death of B.A., the monies in that checking account should have passed to both Helen and Roger. As the case law provides, it matters not whether the money in the checking account originated from either B.A., Helen or Roger, as Helen would suggest. See Strange, 548 *1139 So.2d at 1327; Weaver, 228 So.2d at 593. The fact remains that Roger’s name was on the account as a joint tenant with rights of survivorship.
¶ 42. The lower court found, and the majority agrees, that Roger’s name was there as a matter of convenience. I find that decision was in error due to the nature of the wording on the checking account and other supporting authority. Intent as to why the account was created is irrelevant. “We search for intent, but when we search for intent we accept that the law directs our search and points first and foremost to the text the parties created.” Cooper v. Crabb, 587 So.2d 236, 240 (Miss.1991). In Cooper, a case with a similar fact scenario, a joint account was created for a matter of convenience but the surviving joint tenant recovered. Id. at 241. The Mississippi Supreme Court held then, as I do now, the unequivocal language of the joint account agreement must govern and parol evidence detailing intent of creation is of no importance. Id. at 241-42. Furthermore, the parol evidence used in this case should not have been allowed. Estate of Huddleston v. Horn, 755 So.2d 435 (¶ 12) (Miss.Ct.App.1999). ‘Where the language of a legal text is without gross ambiguity, neither parol testimony nor other extrinsic evidence are admissible to show meaning.” Id. (quoting Cooper, 587 So.2d at 240-41). Likewise, the supreme court held that “[p]arol evidence may not impeach an express surviv-orship clause....” Id.
¶ 43. There is no mistake that rights of survivorship applied to Roger. This is even more clear in light of the fact that Helen went back to the bank with Roger to remove B.A.’s name from the account after his death and to again place Roger’s name on the account as a joint tenant with her, with rights of survivorship. Helen had a duty to surrender half of what was in the account at the time of B.A.’s death to Roger because of those rights. B.A. left no valid will and, even if he had and it had purported to give all of the funds in the personal checking account to Helen alone, the explicit language of the account showing rights of survivorship to Helen and Roger would defeat such a will. See Strange, 548 So.2d at 1328.
¶ 44. As such, it is my opinion that Roger is entitled to half of the monies in the checking account, or half of $21,400, which was the amount in the account at the time of B.A.’s death on February 8, 1995. In addition, Roger is entitled to the percentage of interest earned on the account at that time. I would thérefore remand this issue to the chancery court for a hearing on the amount of interest earned on the account as of February 8, 1995, and instruct the court to award Roger $10,700 plus the appropriately calculated amount of interest, in accordance with the laws of joint tenancies with rights of survivorship as laid out by our supreme court.
THOMAS, LEE and BRANTLEY, JJ., JOIN THIS SEPARATE OPINION.